LEE GABRIEL, JUSTICE
We issued our opinion and judgment in this appeal on August 31, 2017. Appellants Peter Schmitz, Sean Pollock, Larry LaDuke, and Becky LaDuke (collectively, Appellants) filed motions for rehearing and for en banc reconsideration. Appellee Denton County Cowboy Church (the Church) also filed a motion for rehearing. After requesting responses to the rehearing motions, we now grant Appellants' motion for rehearing,[3] grant the Church's motion for rehearing, withdraw our August 31, 2017 opinion and judgment, and issue the following memorandum opinion on rehearing without rebriefing or further argument. See Tex. R. App. P. 49.3.
In this appeal we are asked whether the trial court abused its discretion by denying Appellants' request for a temporary injunction or erred by granting the pleas to the jurisdiction filed by the Church and appellee The Town of Ponder, Texas (the Town) in the context of Appellants' suit for a declaratory judgment, injunctive relief, civil-rights violations, and nuisance injuries arising from the Town's facilitation of and the Church's activities at its current and future rodeo arenas. Other than Appellants' declaratory- and injunctive-relief claims directed to the Town's alleged violations of the Texas Open Meetings Act (TOMA), Appellants failed to raise a clear and unequivocal waiver of the Town's governmental immunity. The Church established that Appellants did not have standing *348 to enforce the Town's zoning scheme through declaration or injunction; however, Schmitz demonstrated his standing to seek redress from the Church for his private-nuisance injuries. Finally, Appellants failed to establish on appeal that the trial court clearly abused its discretion by denying their request for a temporary injunction. Therefore, we affirm in part and reverse in part the trial court's orders and remand limited portions of this case to the trial court for further, consistent proceedings.
I. BACKGROUND[4]
A. SPECIAL-USE PERMIT AND ZONING CHANGE
In 2008, the Church bought a seven-acre tract of land (the original tract) located in the Town, which is incorporated as a Type-A, general-law municipality. See Tex. Loc. Gov't Code Ann. § 5.001 (West 2008). At that time, the original tract was zoned as SF-2-"Single-Family Residential District-2"-which "provides for a minimum residential building site of 8,000 square feet and a minimum living area of 1,200 square feet." Ponder, Tex., Code of Ordinances tit. XV, chap. 154, § 154.03 (2017). This equates to approximately four to five single-family homes per acre.[5] The Church began conducting weekly "rodeo events" in an outdoor rodeo arena that the Church built on the original tract in 2009.
On January 31, 2014, the Church bought an SF-2, 12-acre tract (the new tract) that adjoined the original tract and was directly north of Appellants' homes, which are similarly located in an area zoned for low-density residences. In 2015, the Church began constructing on the new tract "a 350-foot x 175-foot arena," which would be a building consisting of "over 61,000 square feet." After starting construction, the Church applied for a commercial-building permit, which the Town issued on July 13, 2015. The permit allowed the Church to construct an "OPEN ARENA ON 3 SIDES. FULL CON[C]ESSION-REST ROOM AREA." On July 21, 2015, Appellants by letter requested that the Town revoke the commercial-building permit and that the Town notify the Church to stop construction on the new tract. On August 5, 2015, the Church filed an application for a specific-use permit for a multi-use event center on the new tract.
The Town sent a public-hearing notice to all property owners within 200 feet of the new tract and informed the property owners that the Town's council, acting as its planning and zoning commission,[6] would conduct a public hearing on August 24, 2015, to "consider recommendations regarding a specific use permit request" by the Church to build a "Multi Use Event Center" on the new tract:
The Event Center would be used to house among other things, youth ministry, fellowship, and sermons as well as cowboy related rodeo type events, which currently occur and have been occurring for the past several years on [the original tract] in the outdoors, uncovered and uncontained.
The Event Center would be fully enclosed on the South end to shield the adjacent residential neighborhood from nuisances such as bright lights, loud *349 speakers and dust. The West side will have a 4ft bottom "skirt" and open the remaining 10ft. The East side will also have a 4ft bottom "skirt", and additionally will contain a full concession, lounge, and restroom facility. The North end will be fully enclosed to help shield against the elements.
All of the event lighting would be contained within the Event Center, whereas currently in the open air arena that is being used, the lighting spills out into the neighboring community.
The sounds emanating from the speakers can be turned down inside the Event Center and will be muted and more contained, whereas now in the open air arena that is being used, the sounds spill out into the neighboring community.
The Event Center would contain much more of the dust and dirt kicked up at events, whereas currently in the open air arena being used, the dust is stirred up and carried far and wide, including into the neighboring community.
The Town also notified the property owners that the hearing was for the additional purpose of deciding the Town's recommendation and request for a "zoning change [of the new tract] to AG (Agricultural)."[7] See Ponder, Tex., Code of Ordinances tit. XV, ch. 154, § 154.58(C)(2) (2017). In the zoning-change notice, the Town recognized that the "surrounding properties to the North, and West [of the new tract] are currently zoned AG" and that the change to the new tract "would be in keeping with rural location and allow for agricultural uses of the property."
The Town then posted a notice that the council would immediately convene in special session after meeting as the commission on August 24, 2015. On its posted agenda, the council stated that it would consider and act on the Church's application for a specific-use permit and that "[t]he event center is considered to be part of the church and should be allowed under the Federal Religious Land Use and Institutionalized Persons Act" (RLUIPA).
At the noticed meeting, Appellants' attorney and seven adjacent homeowners-including Schmitz, Larry LaDuke, and Pollock-spoke against the zoning change. A Church representative urged the commission to recommend approval of the zoning change to Agricultural. The recommendation to rezone the new tract failed after a two-to-two vote with one abstention.[8] The commission then considered the Church's specific-use permit request. Three citizens spoke against the permit, and the Church's representative addressed some of their concerns. The commission then recommended, by a three-to-one vote with one abstention, "to allow for a specific use permit" for the new tract.
At the conclusion of the commission's meeting, the Town's council opened its meeting and considered the zoning change to the new tract and the Church's request for a specific-use permit.[9] Two residents *350 again spoke against the zoning request, and the Church's representative stated that the Church would attempt to address the surrounding neighbors' concerns with the proposed arena on the new tract. The five-member council then unanimously voted to adjourn into "executive session" to "Consult[ ] with Attorney," citing section 551.071 of the government code-part of TOMA. See Tex. Gov't Code Ann. § 551.071 (West 2017). When the council reconvened on the issue, Appellants' attorney spoke against the zoning change and the Church's representative again urged its approval. Schmitz pointed out to the council that of the notified residents who responded in writing to the notices of the proposed zoning change and specific-use permit, one was unopposed and eight were opposed to their approval. By a three-to-one vote with one abstention, the council approved "the zoning change from SF-2 to AG" for the new tract. The council then voted to approve, by the same vote margin, the requested special-use permit for the Church to build a multi-use event center on the new tract with the following provision: "That the arena be constructed according to the approved plans, designed to mitigate nuisance caused by noise, dust and lighting and that all activities conducted thereon adhere to all existing codes of ordinances."
On September 14, 2015, Appellants filed a protest with the Town, arguing that the special-use permit should be revoked because it was issued in violation of the Town's ordinances. The Church sought a new commercial-building permit for the proposed arena on the new tract, which the Town issued on October 5, 2015.[10]
B. LITIGATION
Before the Town held its August 24, 2015 meeting on the Church's permit request and zoning change, Appellants filed suit against the Church and the Town. In their petition,[11] Appellants requested declarations under the Uniform Declaratory Judgments Act (the UDJA) that the Church's construction of the arena on the new tract violated the Town's ordinances in several respects and that the Town violated its own ordinances and TOMA by allowing the construction, rendering the Town's actions void. Appellants also raised a claim under § 1983 arguing that the Town's zoning change from SF-2 to AG was impermissible spot zoning. Finally, Appellants raised a claim against the Church and the Town seeking legal relief for their private-nuisance injuries and requested a temporary and permanent injunction of construction of the proposed arena on the new tract and of the operation of the open-air arena on the original tract.
The Town filed a plea to the jurisdiction and asserted that the trial court did not have subject-matter jurisdiction over Appellants' claims because it was entitled to governmental immunity. The Church also filed a plea to the jurisdiction arguing that Appellants lacked standing to seek enforcement of the Town's ordinances[12] and that Appellants' nuisance injuries were not ripe, were speculative, and were time-barred to the extent they were based on the original tract's open-air arena.
*351 The trial court held an evidentiary hearing on Appellant's temporary-injunction request and on the pleas to the jurisdiction. The trial court denied Appellants' request for a temporary injunction and granted the pleas, dismissing Appellants' claims against the Town and the Church.[13] After Appellants timely requested findings of fact and conclusions of law and notified the trial court that they were past due, the trial court entered findings and concluded that Appellants did not have standing to enforce the Town's zoning ordinances and that their nuisance claims were not ripe. See Tex. R. Civ. P. 296 - 97. It further concluded that a decision in favor of Appellants would constitute a substantial burden on the Church's religious exercise, violating RLUIPA. See 42 U.S.C.A. § 2000cc (West 2012). The trial court also denied Appellants' motion for new trial.
Appellants now appeal and argue that the trial court erred by concluding it did not have subject-matter jurisdiction over their request for a declaratory judgment, their § 1983 claim, their claim asserting nuisance injuries, and their request for injunctive relief. They also contend that the trial court abused its discretion by denying their request for a temporary injunction pending trial.
II. TRIAL COURT JURISDICTION
A. STANDARD AND SCOPE OF REVIEW
A plea to the jurisdiction is a dilatory plea that is unconcerned with the merits of the asserted claims and that challenges the trial court's power to adjudicate a case. Mission Consol. ISD v. Garcia , 372 S.W.3d 629, 635 (Tex. 2012) ; Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855 (Tex. 2002) ; Weiderman v. City of Arlington , 480 S.W.3d 32, 36 (Tex. App.-Fort Worth 2015, pet. denied). The burden is on the plaintiffs to affirmatively demonstrate the trial court's jurisdiction. Heckman v. Williamson Cty. , 369 S.W.3d 137, 149-50 (Tex. 2012). We review a trial court's determination of the issue de novo as a question of law. Hous. Belt & Terminal Ry. Co. v. City of Hous. , 487 S.W.3d 154, 160 (Tex. 2016) ; Weiderman , 480 S.W.3d at 36.
A plea to the jurisdiction may challenge whether the plaintiffs' pleadings affirmatively alleged facts showing the court's jurisdiction and may also challenge the existence of jurisdictional facts to support the pleadings. Garcia , 372 S.W.3d at 635. Where the plea challenges the existence of jurisdictional facts, as did the Town's and the Church's pleas, the trial court may consider the evidence submitted by the parties to resolve the issue "even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.' " Garcia , 372 S.W.3d at 635 (quoting Tex. Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004) ); see Alamo Heights ISD v. Clark , No. 16-0244, 544 S.W.3d 755, 783-85, 2018 WL 1692367, at *18 (Tex. Apr. 6, 2018) ; Heckman , 369 S.W.3d at 150. As such, the trial court's review mirrors that of a traditional summary judgment:
Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue. If a fact issue exists, the trial court should deny the plea. But if the relevant evidence is undisputed or the plaintiff fails to raise a *352 fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law.
Garcia , 372 S.W.3d at 635 (footnotes omitted); see also HSBC Bank USA, N.A. v. Watson , 377 S.W.3d 766, 773 (Tex. App.-Dallas 2012, pets. dism'd). In general, we analyze jurisdiction separately for each claim. See Trant v. Brazos Valley Solid Waste Mgmt. Agency, Inc. , 478 S.W.3d 53, 58 (Tex. App.-Houston [14th Dist.] 2015, pet. denied).
Here, the trial court entered fact findings at Appellants' request[14] even though Appellants were not entitled to findings. See Goldberg v. Comm'n for Lawyer Discipline , 265 S.W.3d 568, 573 (Tex. App.-Houston [1st Dist.] 2008, pet. denied). Because we review the trial court's jurisdictional ruling under a summary-judgment rubric, the trial court was not authorized to grant the plea to the jurisdiction if it found genuine issues of material fact regarding jurisdiction, which must be finally decided by a fact-finder. See ids="8203649" index="18" url="https://cite.case.law/sw3d/265/568/#p573">id. Based on this summary-judgment standard-a material fact issue thwarts a plea to the jurisdiction-"findings of fact are superfluous." Rebecca Simmons & Suzette Kinder Patton, Plea to the Jurisdiction: Defining the Undefined , 40 St. Mary's L.J. 627, 666-67 (2009) ; see Hous. Auth. of El Paso v. Beltran Elec. Contractors, Inc. , No. 08-16-00043-CV, 550 S.W.3d 707, 711-12, 2018 WL 1026452, at *3 (Tex. App.-El Paso Feb. 23, 2018, pet. filed) (recognizing fact findings inappropriate when judgment rendered as a matter of law and, therefore, "should not be requested, made, or considered on appeal"); cf. Williams v. Moores , 5 S.W.3d 334, 336 (Tex. App.-Texarkana 1999, pet. denied) ("The trial court should not make, and the appellate court cannot consider, findings of fact and conclusions of law in connection with a summary judgment."); 6 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 28:8 (2d ed. 2014) ("Because determinations in a summary judgment proceeding are as a matter of law, it is not proper to request or issue findings of fact."); Judge David Hittner & Lynne Liberato, Summary Judgments in Texas: State and Federal Practice , 52 Hous. L. Rev. 773, 816 (2015) ("The reason findings of fact and conclusions of law have no place in summary judgment practice is that the judge has no factual disputes to resolve."). Because the trial court granted the pleas, it necessarily ruled as a matter of law; therefore, we need not consider the findings in our review of the legal issue regarding the trial court's subject-matter jurisdiction over Appellants' claims. Cf. Miranda , 133 S.W.3d at 227-28 ("If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction."); Williams , 5 S.W.3d at 336 (recognizing appellate court cannot consider fact findings in summary-judgment appeal).
In sum, we need not defer to any unchallenged factual finding or review the findings for sufficiency as we would if findings *353 had been appropriate.[15] See, e.g. , Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC , 437 S.W.3d 518, 523 (Tex. 2014). And, of course, we are not bound by any of the trial court's legal conclusions in our de novo review. See, e.g. , ids="6926461" index="27" url="https://cite.case.law/sw3d/437/518/#p523">id. Similarly, we may consider any of the Town's and the Church's jurisdictional grounds even if the trial court expressly relied on a different ground in its findings and conclusions. See Bansal v. Univ. of Tex. M.D. Anderson Cancer Ctr. , 502 S.W.3d 347, 351-52 (Tex. App.-Houston [14th Dist.] 2016, pet. denied) (relying on San Antonio Water Sys. v. Nicholas , 461 S.W.3d 131, 136 (Tex. 2015) ), cert. denied , --- U.S. ----, 137 S. Ct. 2103, 197 L.Ed.2d 896 (2017) ; Ward v. Lamar Univ. , 484 S.W.3d 440, 452 & n.8 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (op. on reh'g).
B. THE TOWN
1. The UDJA
As we previously stated, Appellants sought, under the UDJA, several declarations that the Town acted outside its authority by issuing the permits and by granting the zoning change on the original and new tracts. A suit against a governmental unit, such as the Town, impacts governmental immunity, which may be raised in a plea to the jurisdiction. See Garcia , 372 S.W.3d at 635-36 ; see also Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3) (West Supp. 2017) (defining governmental unit to include a political subdivision of the state, including a city). The Town relied on its governmental immunity in its plea, asserting that the factual bases of Appellants' claims did not reflect a clear and unambiguous waiver of the Town's immunity. The Town further specified that Appellants' requested declarations would be inappropriate because there was no justiciable, actual controversy between the Town and Appellants that would be resolvable by declaration and because the requested declarations became moot once the new tract was rezoned.
The UDJA gives courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 2015). But it does not confer subject-matter jurisdiction on a trial court-it is "merely a procedural device for deciding cases already within a court's jurisdiction." Tex. Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 621-22 (Tex. 2011). The UDJA provides a limited waiver of governmental immunity, allowing courts to declare an affected person's rights, status, or legal relations regarding a "question of construction or validity arising under" a municipal ordinance. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2015). In other words, the UDJA waives governmental immunity over claims that an ordinance is invalid. See City of El Paso v. Heinrich , 284 S.W.3d 366, 373 n.6 (Tex. 2009) ; Ex parte Springsteen , 506 S.W.3d 789, 798-99 (Tex. App.-Austin 2016, pet. denied). The UDJA does not, however, waive governmental immunity over a claim seeking a declaration of the claimant's statutory rights or over a claim that government actors have acted outside the law-ultra vires. See Cty. of El Paso v. Navar , 511 S.W.3d 624, 634 (Tex. App.-El Paso 2015, no pet.) (citing Sefzik , 355 S.W.3d at 621 and Heinrich , 284 S.W.3d at 372-73 ).
The majority of Appellants' requested declarations would establish that *354 the Town, not the individual committee or council members, violated or misapplied its own ordinances or procedures, rendering its actions arbitrary and unreasonable and, therefore, void. Appellants did not seek to declare any applicable statute or ordinance invalid. In introducing its requested declarations, Appellants alleged that the declarations "concern[ed] the actions and conduct of the Town ... in allowing the ... Church to conduct construction activities on the [o]riginal [tract] without proper zoning and permits and on the [n]ew [tract] without proper zoning and permits ... in violation of its comprehensive plan/ordinance." In other words, these requests challenged the Town's actions contrary to its ordinances and do not fall within the limited waiver of immunity provided under the UDJA; thus, the Town was entitled to immunity. See Sefzik , 355 S.W.3d at 622 ; see also City of New Braunfels v. Carowest Land, Ltd. , No. 03-16-00249-CV, 549 S.W.3d 163, 171, 2017 WL 2857142, at *5 (Tex. App.-Austin June 29, 2017, no pet.) (concluding UDJA claims against a city were barred by immunity because claimant "did not challenge the validity of a statute or other law but, in substance, complained of the City's conduct-that the City [acted] illegally or improperly violated laws"-and "did not assert ultra vires claims against public officials"); City of Dall. v. E. Vill. Ass'n , 480 S.W.3d 37, 46 (Tex. App.-Dallas 2015, pet. denied) (op. on reh'g) ("Under the UDJA, governmental immunity is waived if the proceeding involves the validity of a municipal ordinance. Nothing more. Nothing less. For jurisdictional purposes, what is required is a pleading that would support the invalidation of the ordinance.").
Appellants contend that even if they failed to affirmatively demonstrate a waiver of immunity under the UDJA, the Town implicitly waived its governmental immunity by ordinance:
Any person or corporation violating any of the provisions of this chapter [governing planning and zoning] shall upon conviction be fined a sum not to exceed $2,000 per day and every day that the provisions of this chapter are violated shall constitute a separate and distinct offense. In addition to the penalty provided for, the right is hereby conferred and extended upon any property owner owning property in any district where the [p]roperty owner may be affected or invaded by violation of the terms of this chapter to bring suit in the courts having jurisdiction thereof and obtain any remedies as may be available at law and equity in the protection of the rights of the property owners.
Ponder, Tex., Code of Ordinances tit. XV, ch. 154, § 154.99 (2017); see also Tex. Loc. Gov't Code Ann. § 211.012 (West 2016) (empowering municipalities to adopt ordinances enforcing zoning regulations). Even assuming that a governmental unit is authorized to waive its own immunity by ordinance, this ordinance-section 154.99-does not constitute a clear and unambiguous waiver of the Town's immunity. See generally Tex. Gov't Code Ann. § 311.034 (West 2013) ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); Tooke v. City of Mexia , 197 S.W.3d 325, 344 (Tex. 2006) (questioning municipality's authority to waive its own immunity but concluding city's charter was not clear and unambiguous waiver). The Town's penalty provision merely provides that a private citizen affected by a violation of a zoning ordinance may file suit if the trial court has jurisdiction over such a claim and if a legal remedy is available at law or equity. We conclude that the Town did not clearly and unambiguously waive its governmental immunity *355 through its own ordinance. See Univ. of Tex. at El Paso v. Herrera , 322 S.W.3d 192, 201 (Tex. 2010) (concluding statement in university's handbook referencing employees' possible right to bring suit did not waive Eleventh Amendment immunity); Tooke , 197 S.W.3d at 344 ("All [the charter] clearly says is that the City can be sued and impleaded in court when suit is permitted, not that immunity is waived for all suits."); cf. Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth. , 320 S.W.3d 829, 837 (Tex. 2010) ("[A] statute that contemplates a government entity's involvement in litigation does not 'clearly and unambiguously waive' the entity's immunity from suit.").
Appellants also relied on the waiver of immunity found in TOMA: "An interested person ... may bring an action by mandamus or injunction to stop, prevent, or reverse a violation ... of this chapter by members of a governmental body." Tex. Gov't Code Ann. § 551.142(a) (West 2017). This limited waiver of immunity does not apply to most claims under the UDJA. See Carowest Land , 549 S.W.3d at 172, 2017 WL 2857142, at *5. However, it does apply to claims seeking a declaration that an action taken in violation of TOMA was voidable. See Town of Shady Shores v. Swanson , No. 02-15-00338-CV, 544 S.W.3d 426, 437 & n.1, 2018 WL 472902, at *5 & n.1 (Tex. App.-Fort Worth Jan. 18, 2018, no pet. h.). Appellants alleged that the Town failed to comply with its own open-meeting ordinances and TOMA before taking the complained-of actions, and Appellants sought a declaration that those actions were thereby invalid. See generally Tex. Gov't Code Ann. § 551.141 (West 2017) (providing actions taken by governmental body in violation of TOMA are voidable); Ponder, Tex., Code of Ordinances tit. III, ch. 30, § 30.16(A) (2017) (subjecting all council meetings to TOMA requirements). These narrow declaratory requests based on Appellants' allegations of the Town's violations of TOMA were subject to TOMA's limited waiver of immunity, conferring subject-matter jurisdiction on the trial court; therefore, the trial court erred by granting the Town's plea to the jurisdiction regarding Appellants' declaratory requests based on violations of TOMA and on violations of the Town's ordinances enacted under TOMA. See Swanson , 544 S.W.3d at 437-38 & n.1, 2018 WL 472902, at *5 & n.1. Similarly, it was error to dismiss Appellants' attorneys-fee claim arising from their TOMA-based, UDJA claim. See id. at 437-38, at *5.
The Town asserted that Appellants' allegation of a TOMA violation was conclusory and, therefore, was insufficient to adequately plead a waiver of the Town's governmental immunity. Appellants alleged in their petition that the Town's meeting notices were "highly prejudicial, designed to convince impacted residents to not oppose the change, and were not in compliance with the Town of Ponder Ordinances" and that the council approved the zoning change after a closed meeting with no public discussion. Based on these allegations, Appellants requested a declaration that the Town approved the zoning change and issued the specific-use permit in violation of TOMA. Appellants also sought a declaration that the Town "failed to follow Town of Ponder ordinances and government code notices for meeting[s] held by the Town of Ponder," rendering its actions void.[16] Appellants sufficiently alleged a violation of TOMA and thereby affirmatively *356 demonstrated the trial court's jurisdiction.[17] Cf. Kilburn v. Fort Bend Cty. Drainage Dist. , 411 S.W.3d 33, 40 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (concluding factual allegations, including facts alleged in earlier portion of petition and incorporated into statement of claim, sufficiently demonstrated waiver of immunity).
But again, the trial court did not err by dismissing the majority of Appellants' UDJA requests, which did not involve TOMA, because Appellants failed to affirmatively demonstrate the trial court's jurisdiction over those requests. See City of Carrollton v. Hamrla , No. 02-15-00119-CV, 2016 WL 93031, at *6 (Tex. App.-Fort Worth Jan. 7, 2016, pet. denied) (mem. op.); City of Dall. v. Turley , 316 S.W.3d 762, 768-69 (Tex. App.-Dallas 2010, pet. denied).
2. 42 U.S.C.A. § 1983
Appellants also raised a claim under § 1983, contending that the Town violated their civil rights by failing to ensure Appellants' due-process rights were protected, taking Appellants' property without just compensation, and impermissibly spot zoning the new tract by changing its designation from SF-2 to AG. 42 U.S.C.A. § 1983 (West 2012). They alleged this claim was remediable under § 1983 as a regulatory takings claim. See id. ; Palazzolo v. Rhode Island , 533 U.S. 606, 617-18, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).
Clearly, the Town's governmental immunity has been waived for a claim asserting the taking of property by a governmental unit without just compensation. See Tex. Const. art. I, § 17 ; City of Dall. v. VSC, LLC , 347 S.W.3d 231, 236-37 (Tex. 2011). Even so, Appellants had the burden to present jurisdictional facts sufficient to establish that their takings claim was viable. See City of Hous. v. Carlson , 451 S.W.3d 828, 830 (Tex. 2014) ; Hearts Bluff Game Ranch, Inc. v. State , 381 S.W.3d 468, 491 (Tex. 2012) ; 32 Tex. Jur. 3d Eminent Domain § 483 (2015) ("In the absence of a properly pled takings claim, the State retains immunity."). Whether Appellants did so was appropriately raised in a plea to the jurisdiction. See City of Dall. v. Saucedo-Falls , 268 S.W.3d 653, 657-58 (Tex. App.-Dallas 2008, pet. denied).
A regulatory taking can occur when governmental action unreasonably interferes with a landowner's use and enjoyment of his property. See Sheffield Dev. Co. v. City of Glenn Heights , 140 S.W.3d 660, 671-72 (Tex. 2004). But a viable takings claim must allege that the governmental unit affirmatively acted; a claim based upon a governmental unit's refusal or failure to enforce its own regulations or ordinances is not a viable takings claim. See Alves v. United States , 133 F.3d 1454, 1458 (Fed. Cir. 1998) ; Grunwald v. City of Castle Hills , 100 S.W.3d 350, 353-54 (Tex. App.-San Antonio 2002, no pet.). Here, Appellants challenged the manner in which the Town enforced its ordinances, changed the zoning on the new tract, and issued the permits to the Church, i.e., the infirmity of the process; therefore, they failed to allege a viable takings claim that would waive the *357 Town's governmental immunity. See Carlson , 451 S.W.3d at 830, 832 ; CPM Trust v. City of Plano , 461 S.W.3d 661, 673 (Tex. App.-Dallas 2015, no pet.). And Appellants have no protected property interest in the manner in which the Town enforced or failed to enforce its ordinances against the Church, rendering Appellants' claim under § 1983 not viable and subject to the Town's plea to the jurisdiction. See Sumner v. Bd. of Adjustments of Spring Valley Vill. , No. 01-14-00888-CV, 2015 WL 6163066, at *10-11 (Tex. App.-Houston [1st Dist.] Oct. 20, 2015, pet. denied) (mem. op.). Because the trial court did not err by granting the Town's plea to the jurisdiction regarding Appellants' § 1983 claim, it follows that Appellants' claim for attorneys' fees based on § 1983 likewise was subject to dismissal.
3. Private-Nuisance Injuries
Appellants sought recovery for their private-nuisance injuries arising from the Town's "negligent, intentional, and abnormal actions," leading to a "condition that substantially interferes with [Appellants'] use and enjoyment of their properties." Appellants claimed that the Town engaged in "spot zoning, approv[ed] building permits without authority, and depriv[ed] [Appellants] of their due process rights by [its] wrongful conduct, resulting in a nuisance to [Appellants]" and in an adverse effect on their property values. Again, liability against a governmental unit for private-nuisance injuries arises only when governmental immunity is clearly and unambiguously waived. See City of Dallas v. Jennings , 142 S.W.3d 310, 316 (Tex. 2004).
The only waiver alleged by Appellants regarding the Town's substantial interference with their property enjoyment was section 154.99 of the Town's ordinances, which we discussed in relation to their UDJA claim and found insufficient to waive the Town's immunity. See Thornton v. Ne. Harris Cty. MUD 1 , 447 S.W.3d 23, 34-35 & n.7 (Tex. App.-Houston [14th Dist.] 2014, pet. denied) (recognizing plaintiff bears burden to affirmatively demonstrate immunity waiver and only addressing waiver grounds expressly raised by plaintiff to trial court); cf. Tex. Dep't of Transp. v. City of Sunset Valley , 146 S.W.3d 637, 647 (Tex. 2004) (recognizing governmental immunity over claim for private-nuisance injury waived only if statutory waiver applied or if substantial interference with property enjoyment constituted unconstitutional taking). Therefore, Appellants failed to affirmatively demonstrate the trial court's jurisdiction over its claim for their private-nuisance injuries against the Town, and the trial court did not err by granting the Town's plea directed to this claim.
4. Permanent Injunctive Relief
Finally, Appellants requested a permanent injunction directed to the Town's past and future actions on the original and new tracts. Governmental entities retain immunity from claims for permanent injunctive relief based on allegations that government officials violated the law or exceeded their powers under the law. See Tex. Dep't of Ins. v. Reconveyance Servs., Inc. , 306 S.W.3d 256, 258-59 (Tex. 2010) ; Heinrich , 284 S.W.3d at 372-73. Most of Appellants' injunctive requests focused on the Town's alleged violations of or failures to enforce its own ordinances by changing the zoning of the new tract and by issuing permits to the Church. They did not challenge the validity of the underlying statutes or ordinances; thus, these requests sought against the Town and not against the individual officials in their official capacities are barred by the Town's governmental immunity, which is not waived by section 154.99 as we have already *358 discussed. See, e.g. , Patel v. Tex. Dep't of Licensing & Reg. , 469 S.W.3d 69, 76-77 (Tex. 2015) ; E. Vill. Ass'n , 480 S.W.3d at 47-48. Because Appellants failed to affirmatively demonstrate the trial court's jurisdiction, the trial court did not err by granting the Town's plea directed to most of Appellants' requests for permanent injunctive relief based on the Town's zoning and permit decisions.
But Appellants also alleged their entitlement to permanent injunctive relief based on the Town's failure "to follow notice provisions set out in its zoning ordinances." Appellants asserted in their jurisdictional brief to the trial court and in their motion for new trial, that TOMA's limited waiver of immunity applied to its injunction request based on the Town's TOMA violations. Indeed, TOMA gives interested persons the right to seek an injunction to stop, prevent, or reverse a governmental body's violation of TOMA, which applies to actions taken by a municipality's zoning authority.[18] See Tex. Gov't Code Ann. § 551.142(a) ; Tex. Loc. Gov't Code Ann. § 211.0075 (West 2016) ; see also Swanson , 544 S.W.3d at 437-38 & n.1, 2018 WL 472902, at *5 & n.1. Appellants' requests for permanent injunctive relief from the Town's alleged TOMA violations fell within this statutory waiver of the Town's immunity.
5. Summary Regarding the Town
The trial court did not err by granting the Town's plea to the jurisdiction based on the trial court's lack of subject-matter jurisdiction over most of Appellants' claims against the Town. Because jurisdictional facts cannot be alleged that would bring these claims against the Town within a waiver of immunity, Appellants are not entitled to an opportunity to replead as Appellants urge. See Reconveyance Servs. , 306 S.W.3d at 258-59 ; Tex. A & M Univ. Sys. v. Koseoglu , 233 S.W.3d 835, 840 (Tex. 2007).
But to the extent Appellants alleged that the Town's violations of TOMA rendered its zoning and permit decisions voidable and entitled them to a declaration of such and to permanent injunctive relief, the Town's immunity has been expressly waived under TOMA. The trial court erred by dismissing these narrow claims and Appellants' attorneys-fee claim under the UDJA. We stress that the waiver of immunity provided by TOMA does not apply to the extent Appellants seek more than injunctive relief or a declaration that the Town's actions were voidable based on the alleged TOMA violations. Swanson , 544 S.W.3d at 437, 2018 WL 472902, at *5. To be clear, the only claims against the Town that the trial court has subject-matter jurisdiction to decide are the following claims under the UDJA and for permanent-injunctive relief alleged in Appellants' fourth amended petition:
• "Plaintiffs seek a declaration that ... the town of Ponder has failed to follow Town of Ponder ordinances and government code notices for meeting[s] held by the Town of Ponder."
• Plaintiffs seek a declaration that the "Town of Ponder's zoning change regarding the Property was procured in whole or in part through *359 violations of the Texas Open Meetings Act."
• Plaintiffs seek a declaration that the "Town of Ponder's grant of the Specific Use Permit regarding the Property was procured in whole or in part through violations of the Texas Open Meetings Act."
• Plaintiffs are entitled to a permanent injunction because the "Town of Ponder failed to follow notice provisions set out in its zoning ordinances."
The Town argues that if all of Appellants' claims are not subject to governmental immunity, RLUIPA mandated that it allow construction and operation of the arenas and divested the trial court of jurisdiction over Appellants' claims. The application of RLUIPA to authorize the Town's actions as against Appellants' claims does not implicate the trial court's subject-matter jurisdiction. See, e.g. , Sossamon v. Lone Star State of Tex. , 560 F.3d 316, 333-34 (5th Cir. 2009) (finding genuine issues of material fact on substantial-burden prong of RLUIPA, precluding summary judgment on claim for injunctive relief), aff'd , 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011) ; Mintz v. Roman Catholic Bishop of Springfield , 424 F.Supp.2d 309, 311, 316-22 (D. Mass. 2006) (reviewing zoning board's decision to grant church variance to build "social hall," concluding on the basis of evidence that a denial would substantially burden religious exercise, and granting church's summary-judgment motion); Williams Island Synagogue, Inc. v. City of Aventura , 329 F.Supp.2d 1319, 1325-27 (S.D. Fla. 2004) (denying synagogue's summary-judgment motion based on material fact issues as to whether city's permit refusal constituted a substantial burden). As such, it was not appropriately raised in a plea to the jurisdiction. See generally Bland ISD , 34 S.W.3d at 554 (discussing purposes of dilatory pleas). RLUIPA is not equivalent to governmental immunity. It is a defensive sword, not an absolute shield from any inquiry into governmental activity regarding religious institutions.[19] See generally 42 U.S.C.A. § 2000cc(a)(1) (prohibiting governments from enforcing land-use law that substantially burdens religious exercise unless governmental entity can show a compelling governmental interest furthered by least restrictive means possible); 146 Cong. Rec. S7776 (daily ed. July 27, 2000) (jt. statement of Sen. Hatch & Sen. Kennedy) ("This Act [RLUIPA] does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination and unfair delay.").
C. THE CHURCH
Against the Church, Appellants raised claims for declaratory and injunctive relief and a claim for nuisance injuries. The Church contends on rehearing that the "totality" of Appellants' claims against it "sound in nuisance."
1. Standing: Declaratory and Permanent Injunctive Relief
Appellants sought declarations that the Church's actions violated the Town's zoning ordinances and requested a permanent injunction enforcing those ordinances on the original and new tracts. Again, they did not challenge the validity of the ordinances themselves. The Church asserted in its plea to the jurisdiction that Appellants' claims against it sought "do-it-yourself zoning enforcement," which Appellants *360 as private citizens did not have standing to seek. Standing is a component of subject-matter jurisdiction, which is appropriately raised in a plea to the jurisdiction. See Sneed v. Webre , 465 S.W.3d 169, 180 (Tex. 2015).
Ponder enacted its zoning ordinances under Chapter 211 of the local government code, which confers zoning authority on municipalities and defines the scope of their power in furtherance of that authority. See Tex. Loc. Gov't Code Ann. §§ 211.003 -.017 (West 2016); see also Ponder, Tex., Code of Ordinances tit. XV, ch. 154, § 154.02 (2017). Specifically, section 211.012(c) allows a municipality, "in addition to other remedies," to "institute appropriate action" to enforce its ordinances or regulations against a noncompliant property owner.[20] Tex. Loc. Gov't Code Ann. § 211.012(c). A violation of a municipal zoning ordinance is a misdemeanor offense; thus, the Town may enforce its zoning ordinances under a criminal-enforcement method. See itation index="100" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20211.012">id. § 211.012(b) ; Ponder, Tex., Code of Ordinances tit. XV, ch. 154, § 154.99.
The Church argued to the trial court that section 211.012 empowered only the Town to enforce its zoning ordinances, divesting the trial court of jurisdiction over Appellants' private-enforcement attempt based on their lack of standing. See GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet , 61 S.W.3d 599, 621 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). We agree that to declare and enjoin the Church's alleged violations of the Town's zoning ordinances is exclusively the province of a municipality. See ids="9458037" index="102" url="https://cite.case.law/sw3d/61/599/#p621">id. By seeking to enforce the Town's zoning ordinances as against the Church through declaratory and injunctive relief, Appellants "tried to usurp the authority given by the legislature to [the municipality] to enforce its own zoning ordinances through criminal prosecutions or injunctive relief under [section] 211.012(c)." See ids="9458037" index="103" url="https://cite.case.law/sw3d/61/599/#p621">id. at 621-22. The trial court did not err by granting the Church's plea to the jurisdiction directed to Appellants' injunctive and declaratory claims.[21]
2. Standing: Private Nuisance
But we do not read section 211.012 to preclude Appellants from seeking redress for their damages occasioned by the Church's activities allegedly resulting in private-nuisance injuries. If a property owner can show that the violation of a zoning ordinance will cause him to suffer damages or injury beyond that which will be suffered by a member of the general public, the affected property owner is entitled to seek redress from the violation. See Persons v. City of Fort Worth , 790 S.W.2d 865, 871 (Tex. App.-Fort Worth 1990, no writ) ; Crump v. Perryman , 193 S.W.2d 233, 236 (Tex. Civ. App.-Dallas 1946, no writ) (dictum); Eric M. Larsson, Cause of Action by Private Party to Enjoin Zoning Violation , 44 Causes of Action 2d 619, at §§ 9-10, 24 (2010). A hypothetical injury will not confer standing, and it was Appellants' burden to assert a particularized, legally protected interest that is actually or imminently affected by the Church's activities. See *361 Canty v. City of Nacogdoches , No. 12-08-00001-CV, 2009 WL 3288299, at *4 (Tex. App.-Tyler Oct. 14, 2009, pet. denied) (mem. op.). In other words, a hypothetical injury is not ripe for determination and cannot support standing. See Heckman , 369 S.W.3d at 154-55.
The Church argues that Appellants have not established their standing to seek redress from the Church's substantial interference with the reasonable use and enjoyment of their properties because their alleged harm is hypothetical in nature-speculative-and, therefore, not ripe for adjudication.[22] Indeed, a person will have standing to complain of an injury in fact-a private nuisance-if the alleged injury is (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. See Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc. , 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ; Stop the Ordinances Please v. City of New Braunfels , 306 S.W.3d 919, 926-27 (Tex. App.-Austin 2010, no pet.). The Church's standing argument focuses on the fact that because the arena on the new tract has not been completed, Appellants' private-nuisance injuries have not accrued.[23] Even though we have concluded that Appellants did not have standing to seek declarations and injunctions against the Church regarding enforcement of the Town's ordinances, we "must assess standing plaintiff by plaintiff, claim by claim." Heckman , 369 S.W.3d at 153.
Appellants alleged that each "currently owns real property that is directly affected by the actions" of the Church because their properties were located directly south of the new tract. In their allegations of nuisance, Appellants contended that the Church knew or should have known that constructing an event center on the new tract so close to their homes "will adversely affect the fair market value of [Appellants'] properties and interfere with their quiet use and enjoyment of same" arising from the "offensive odors, noise from rodeo arena events and patrons, and lights from rodeo arena events and patrons." Similarly, the factual allegations supporting their injunction claim, which were incorporated into their nuisance-injury claim, stated that the arena on the new tract would result in harm-"damages from biological hazards from animal waste, loss of sleep from light and noise thereby disrupting [Appellants'] job performance, intrusion from dirt and dust from rodeo events and gravel roads, and intrusions on [Appellants'] seclusion." They also alleged that the open-air arena on the original tract constituted a nuisance because it
creates an extreme annoyance, sometimes preventing Plaintiffs from spending time in their backyards; the bright stadium lights that can be seen from Plaintiffs' homes; the arena operates well into the night past reasonable hours; following the completion of rodeo events, large trucks make noise and haul the animals off; the announcement system creates undue noise to Plaintiffs and those similarly situated; and the rodeo events held by Defendant Church create *362 substantial interference with Plaintiffs' use and enjoyment of their property.
Finally, they alleged that the construction of the arena on the new tract produced excessive noise and light.
Although we take Appellants' pleaded facts as true, we are not limited to the pleadings to determine the jurisdictional issues raised. See Bland ISD , 34 S.W.3d at 554-55. Here, the Church challenged in their plea the sufficiency of Appellants' allegations to assert standing and the existence of jurisdictional facts to support those allegations. At the trial court's hearing on the Town's and the Church's pleas, only Schmitz produced evidence of a particularized, imminent injury. He testified that when he bought his property in 2001, the lot adjacent to and north of his backyard was empty and was zoned SF-2 as was his lot. Schmitz admitted that the arena on the new tract had not yet been completed, no event had been held there, and there were no lights, speakers, or animals. But lights from the open-air arena on the original tract shone into his backyard. Schmitz relied on the current effects from the open-air arena in asserting a nuisance arising from the arena on the new tract. The edge of the new arena is forty steps from his backyard and dominates the view even over his six-foot fence. The Church's pastor testified that the Church intended to use the new arena in the same manner as it has used the open-air arena-day and night events on most days during the spring and summer. However, the doors on the new arena's south side-the side facing Schmitz's backyard-would remain closed during events.
Schmitz sufficiently pleaded and proved his particularized injury such that he established his standing to assert a nuisance injury arising from the Church's activities. See City of Canyon v. McBroom , 121 S.W.3d 410, 414-15 (Tex. App.-Amarillo 2003, no pet.). And although the arena on the new tract was not completed at the time of the hearing, the Church admitted that it would use that arena in the same manner as it had used the open-air arena, which use Schmitz asserted created a nuisance on his property. This sufficiently established that his particularized injury regarding the arena on the new tract was imminent. See Freedman v. Briarcroft Prop. Owners, Inc. , 776 S.W.2d 212, 217 (Tex. App.-Houston [14th Dist.] 1989, writ denied). Thus, Schmitz at least raised a material fact issue regarding his standing and the ripeness of his injury, which required the trial court to deny the Church's plea based on Schmitz's standing.[24] See State v. Holland , 221 S.W.3d 639, 643 (Tex. 2007).
But the LaDukes and Pollock failed to raise a material fact issue regarding their standing. Although we take as true the facts the LaDukes and Pollock pleaded to demonstrate their standing, the Church challenged the lack of jurisdictional facts to support those allegations. Neither the LaDukes nor Pollock attempted to raise a material fact issue that they suffered a particularized and imminent injury that was more than speculative, conferring standing. Cf. Wilson v. Dallas ISD , 376 S.W.3d 319, 326 (Tex. App.-Dallas 2012, no pet.) (recognizing conclusory statements not competent evidence in jurisdictional plea proceeding). The trial court did not err by granting the Church's plea directed to the LaDukes' and Pollock's nuisance-injury claim.[25]
*363 3. Summary Regarding the Church
In their claims for declaratory and injunctive relief against the Church, Appellants did not challenge the validity of the ordinances themselves. They solely sought enforcement as against the Church, which they do not have standing to do. Regarding Appellants' nuisance-injury claim, Schmitz sufficiently established that his particularized injury occasioned by the Church's actions was imminent; thus, the trial court erred by granting the Church's plea that argued Schmitz did not have standing to assert a nuisance injury. But because the LaDukes and Pollock did not raise a fact issue regarding their standing and do not assert that they did so, the trial court did not err by granting the Church's plea as to those nuisance-injury claimants.
III. TEMPORARY INJUNCTIVE RELIEF
Finally, Appellants argue that the trial court erred by denying their request for a temporary injunction against the Town and the Church. To obtain a temporary injunction, Appellants were required to plead and prove (1) a viable cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury will occur prior to the final judgment. See Butnaru v. Ford Motor Co. , 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g). We review the trial court's denial for an abuse of discretion. See ids="11394696" index="118" url="https://cite.case.law/sw3d/84/198/#p204">id. Accordingly, we look at the evidence submitted to the trial court in the light most favorable to the ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. See Davis v. Huey , 571 S.W.2d 859, 862 (Tex. 1978). We cannot substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonable discretion. See Butnaru , 84 S.W.3d at 204.
Appellants' claims over which the trial court had subject-matter jurisdiction were (1) Appellants' UDJA and permanent-injunction claims based on alleged TOMA violations raised against the Town and (2) Schmitz's nuisance-injury claim raised against the Church. Appellants assert on appeal that they "clearly demonstrated" a cause of action against the Church, their probable right to relief, and the required injury:
Appellants showed that the new rodeo arena construction is located within 80 feet of Appellants' properties, that the arena covers over 61,000 square feet, and that new gravel roads between the rodeo arena and Appellants' properties will be used to transport livestock to rodeo events. Additionally, the Church currently operates rodeos on their existing open-air arena over 1,000 feet from Appellants' homes that produce excessive noise, dust, light, and odor. Further, the new arena will be used to host rodeo events about five nights per week.
Appellants include no record references to support these factual assertions and do not present cogent argument explaining how the trial court's denial exceeded the bounds of reasonable discretion as an unreasonable or arbitrary determination. See, e.g. , Tex. R. App. P. 38.1(i) ; G & D Furniture, LLC v. SFD Enters., Inc. , No. 04-08-00541-CV, 2009 WL 398262, at *1-2 (Tex. App.-San Antonio Feb. 18, 2009, no pet.) (mem. op. on reh'g); Hyperion Holdings, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs , No. 03-05-00563-CV, 2006 WL 367141, at *3 (Tex. App.-Austin Feb. 16, 2006, no pet.) (mem. op.). Indeed, the Church produced evidence that it had never received a complaint about noise, light, or odor arising from the open-air arena *364 and had addressed neighbor complaints arising from the construction of the arena on the new tract. The Church cogently argued to the trial court at the hearing why Appellants had not met their burden to plead and prove their entitlement to a temporary injunction. On this record, we cannot conclude that the trial court clearly abused its discretion by denying Appellants a temporary injunction.
IV. CONCLUSION
Appellants failed to plead and prove a clear and unambiguous waiver of the Town's immunity regarding their claim under § 1983 and regarding the majority of their requests for declarations under the UDJA and for permanent-injunctive relief; thus, the trial court did not err by granting the Town's plea to the jurisdiction regarding these claims. But the Town does not enjoy governmental immunity from Appellants' claims for declaratory and permanent-injunctive relief that rely on the Town's alleged violations of TOMA; thus, the trial court erred by granting the Town's plea to the jurisdiction directed to Appellants' TOMA-based, UDJA and permanent-injunction claims as we previously specified. Similarly, the trial court erred by granting the Church's plea to the jurisdiction regarding Schmitz's nuisance-injury claim because he established his standing to assert such a claim. But the trial court did not err by dismissing Appellants' UDJA and permanent-injunction claims or the LaDukes' and Pollock's nuisance-injury claim brought against the Church based on their lack of standing. Finally, Appellants have failed to show that the trial court clearly abused its discretion by denying their request for a temporary injunction.
We grant in part and overrule in part Appellants' first issue, deny Appellants' second issue, grant in part and overrule in part Appellants' third issue, deny Appellants' fourth issue, and deny Appellants' fifth issue. Accordingly, we (1) affirm in part the trial court's orders granting the Town's and the Church's pleas to the jurisdiction; (2) reverse in part the trial court's order granting the Town's plea to the jurisdiction regarding Appellants' TOMA-based, UDJA claim and TOMA-based, permanent-injunction claim; (3) reverse in part the trial court's order granting the Church's plea to the jurisdiction regarding Schmitz's nuisance-injury claim; (4) affirm the trial court's order denying Appellants' request for a temporary injunction; and (5) remand the case to the trial court for further, consistent proceedings. See Tex. R. App. P. 43.2(a), (d), 43.3(a).

Appellants' motion for reconsideration en banc is denied as moot. See, e.g. , Simien v. Unifund CCR Partners , 321 S.W.3d 235, 238 (Tex. App.-Houston [1st Dist.] 2010, no pet.) (op. on reh'g).

The Town and Appellants stipulated to some of these facts in the trial court. The Church was not a party to the stipulations.

SF-1 allowed for no more than four units per gross acre, and SF-3 allowed for between five and six units per gross acre.

Because the Town is a general-law municipality and because it had not appointed a planning and zoning commission, the Town's governing body-the council-was authorized to act as the commission. See Tex. Loc. Gov't Code Ann. § 211.007(a), (e) (West 2016).

On rehearing, the Town seems to assert that the zoning change was requested by the Church; but the Town and Appellants stipulated that the Town's notices reflected that the Town was "recommending and requesting" the zoning change. See Ponder, Tex., Code of Ordinances tit. XV, ch. 154, § 154.58(B) (2017) (allowing zoning-classification change requests to be initiated by the council or commission).

One commission member abstained from all discussion and voting regarding the rezoning and special-use permit for the new tract because he lived less than 200 yards from the new tract.

Again, the council sat as the planning and zoning commission as allowed under the local government code, adjourned the commission's meeting, and then reconvened as the Town's council to open the council meeting.

The Town revoked the Church's July 13, 2015 permit effective October 2, 2015.

We refer to Appellants' live pleading at the time of the trial court's operative rulings-the fourth amended petition filed December 23, 2015.

The Church argued in the alternative that even if Appellants could stand in the shoes of the Town to enforce its ordinances, the Church enjoyed the protection against burdensome zoning requirements under RLUIPA.

Although this appeal involves the granting of a governmental unit's plea to the jurisdiction, the order was not interlocutory; therefore, the appeal is not accelerated. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2017).

The trial court did not sign its March 7, 2016 findings and conclusions within forty days of Appellants' January 22, 2016 original, timely request. See Tex. R. Civ. P. 296 -97. No party raises this delay on appeal. Indeed, the trial court's plenary power had not expired when it entered the findings based on Appellants' timely motion for new trial, which the trial court denied on March 28, 2016. See Tex. R. Civ. P. 329b(e) ; cf. Morrison v. Morrison , 713 S.W.2d 377, 381 (Tex. App.-Dallas 1986, writ dism'd) (finding no jurisdictional barrier to a trial court's belated findings of fact). In any event, Appellants timely filed their notice of appeal less than ninety days after the trial court granted the pleas. See Tex. R. App. P. 26.1(a).

Indeed, Appellants do not clearly attack the findings on the basis of evidentiary insufficiency. See Tex. R. App. P. 38.1(i).

Appellants incorporated all of their factual allegations into their UDJA claim. See Tex. R. Civ. P. 58.

The Town asserted that its notices were, in fact, sufficient and that the council was entitled to adjourn into executive session under TOMA and the Town's ordinances derived from TOMA. These arguments go to the merits of Appellants' TOMA-based, UDJA claim and are not part of our de novo review of the trial court's subject-matter jurisdiction. See Cty. of Cameron v. Brown , 80 S.W.3d 549, 555 (Tex. 2002) ; Bland ISD v. Blue , 34 S.W.3d 547, 554-55 (Tex. 2000) ; Brennan v. City of Willow Park , 376 S.W.3d 910, 927 (Tex. App.-Fort Worth 2012, pets. denied) (op. on reh'g); Concerned Cmty. Involved Dev., Inc. v. City of Hous. , 209 S.W.3d 666, 673-74 (Tex. App.-Houston [14th Dist.] 2006, pet. denied).

The Town did not dispute that Appellants are interested persons as contemplated by TOMA, expressly stipulating that Appellants owned properties that were "directly north of and adjacent to" the new tract.

That is not to say that RLUIPA would not defeat Appellants' remaining claims against the Town. We are merely holding that RLUIPA does not divest the trial court of the subject-matter jurisdiction to determine its application to the facts presented to the commission and the council.

Similarly, a municipality may bring a civil action to enforce its ordinances affecting health and safety, including zoning ordinances. See Tex. Loc. Gov't Code Ann. § 54.012(1), (3) (West Supp. 2017).

Because the Church asserted RLUIPA in the alternative to this argument, we need not address the Church's argument that it is protected from Appellants' declaratory and injunctive requests by RLIUPA. See Tex. R. App. P. 47.1.

The Church also asserted that Appellants' nuisance-injury claim regarding the open-air arena on the original tract is time-barred. But limitations is not an appropriate subject of a plea to the jurisdiction because it is an affirmative defense, not a jurisdictional infirmity. See In re United Servs. Auto. Ass'n , 307 S.W.3d 299, 308 (Tex. 2010) (orig. proceeding); Univ. of Tex. Med. Branch at Galveston v. Barrett , 112 S.W.3d 815, 817 (Tex. App.-Houston [14th Dist.] 2003) (en banc op. on reh'g), aff'd , 159 S.W.3d 631 (Tex. 2005).

Standing also requires that the injury is fairly traceable to the challenged action of the defendant and that it is likely that the injury will be redressed by a favorable decision. Friends of the Earth , 528 U.S. at 180-81, 120 S.Ct. 693. The Church does not clearly attack these elements of Appellants' standing in their appellate briefing. See Tex. R. App. P. 38.1(i).

Of course, merely because Schmitz has standing to allege a nuisance injury does not mean that he will prevail on the merits. See Freedman , 776 S.W.2d at 216.

In our original opinion, we concluded that the LaDukes and Pollock did not raise a material fact issue on standing. Appellants do not assert in their rehearing motion that this conclusion was in error.